UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTIAN S. PATTERSON,

      Plaintiff,

v.                           CASE No. 8:13-CV-473-T-TGW

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

_____

ORDER

      The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

      The plaintiff, who was fifty-nine years old at the time of the administrative hearing and who has some college education, has worked as

---

      [1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 18).

a line inspector, building maintenance repairer, and toll collector (Tr. 31, 32, 147, 152). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to "[t]wo discs blown in cervical region, neurological damage," a pinched nerve, and numbness in the left hand (Tr. 146). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "remote history of thoracic spine compression fracture (1977); remote history of cervical spondylosis with herniated discs at C5-6 and C6-7, status post C5-C7 fusion (1995-1996); [and] degenerative spur formation anteriorly at C4-5, C5-6, and C6-7" (Tr. 17). He concluded that, with these impairments, the plaintiff has the residual functional capacity (Tr. 19):

> to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He can ... lift and carry 50 pounds occasionally and 25# frequently. He can sit, stand and walk 6 hours in an 8 hour work day. He has no limitations in his ability to push-pull with hand or foot controls. He can frequently climb stairs/ramps, stoop, balance,

> kneel, crouch and crawl, and can occasionally
> climb ladders, ropes and scaffolds. He has no
> manipulative, visual, communicative or
> environmental limitations. He can hear,
> understand, remember and carry out simple routine
> and complex work instructions, and can interact
> appropriately with co-workers, supervisors and the
> general public.

The law judge determined that, despite these limitations, the plaintiff could

return to his past work as a building maintenance repairer and toll collector

(Tr. 21). Alternatively, the law judge found that, based upon the plaintiff's

residual functional capacity, age, education, and work experience, the

medical-vocational guidelines directed a finding that the plaintiff is not

disabled (Tr. 22). The Appeals Council let the decision of the law judge

stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits

and supplemental security income, a claimant must be unable "to engage in

any substantial gainful activity by reason of any medically determinable

physical or mental impairment which ... has lasted or can be expected to last

for a continuous period of not less than twelve months."   42 U.S.C.

423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B). In this case, the plaintiff must also show that he became disabled before his insured status expired on September 30, 2004, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact

-4-

made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11ᵗʰ Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b), 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, the next inquiry (step three) is whether it meets, or equals, a listing in Appendix 1. 20 C.F.R. 404.1520(d), 416.920(d). If not, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can

perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g).

### III.

The plaintiff challenges the law judge's decision on five grounds. Specifically, the plaintiff argues that the law judge erred by: (1) finding that the plaintiff has a residual functional capacity for medium work; (2) failing to find that the plaintiff's carpal tunnel syndrome and knee problems constitute severe impairments; (3) not including all of the plaintiff's limitations in the residual functional capacity assessment; (4) determining that the plaintiff could return to his past work as a toll collector and a building maintenance repairer without developing the requirements of those positions; and (5) improperly discounting the plaintiff's subjective complaints. None of these contentions warrants reversal.

A. As indicated, the plaintiff first argues that the law judge erroneously found that the plaintiff has the residual functional capacity to perform medium work (Doc. 21, pp. 8-10). In this regard, the plaintiff asserts that the law judge improperly relied on the May 6, 2010, opinion of Dr. Frank Walker, a nonexamining reviewing physician.

On May 4, 2010, Dr. Walker completed a Physical Residual Functional Capacity Assessment form in which he opined that the plaintiff is capable of performing light work with limitations for frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and occasional climbing of ladders, ropes, and scaffolds (Tr. 194-95). Dr. Walker indicated that the plaintiff has no manipulative, visual, communicative, or environmental limitations (Tr. 196-97).

Thereafter, on May 6, 2010, Dr. Walker completed a new Physical Residual Functional Capacity Assessment form, this time opining that the plaintiff could perform medium work (Tr. 202). In all other respects, Dr. Walker's opinion from May 4, 2010, remained unchanged (see Tr. 203-05).

The plaintiff complains that Dr. Walker had "no reason" to change his residual functional capacity assessment and "[t]here is no explanation provided either in the record or in the decision that would justify or reconcile this conflict" (Doc. 21, p. 9). However, in violation of the Scheduling Order and Memorandum Requirements (Doc. 15, p. 2), the

plaintiff does not cite any legal authority supporting an obligation of Dr.

Walker or the law judge to provide any such explanation.

Regardless, the law judge expressly recognized that the record

contains two different opinions from Dr. Walker (Tr. 20 n. 1). Thus, the law

judge explained (id.):

> The undersigned notes that Dr. Walker initially
> completed a residual functional capacity
> assessment form indicating the claimant was
> capable of a slightly restricted range of light level
> work activity (Exhibit 2F). Then, two days later,
> Dr. Walker changed his assessment and opined the
> claimant was capable of medium level exertional
> activity (Exhibit 7F). More weight was accorded
> to the more recent opinion of Dr. Walker, which
> also appears to be his final, comprehensive
> opinion.

With respect to Dr. Walker's second opinion, the law judge further stated (Tr.

20-21):

> In determining the claimant's residual functional
> capacity, significant weight was accorded to
> Disability Determination Services (DDS) medical
> consultant Frank Walker, M.D. since he is a
> licensed physician familiar with the evidentiary
> requirements of the Social Security Regulations. In
> May of 2010 after reviewing the claimant's file,
> Dr. Walker opined the claimant was capable of a
> slightly restricted range of medium level work

-9-

activity (Exhibit 7F).   Dr. Walker noted some
minor postural limitations, but that portion of his
opinion was not given any weight since the record
contains no objective evidence to support including
postural limitations within the claimant's residual
functional capacity.   A consultative examination
confirmed essentially normal findings with only
some slightly limited range of motion in the
cervical spine (Exhibit 1F).

The plaintiff argues that "[s]ince Dr. Walker did not provide a

coherent explanation for [his change in opinion], it is improper for the ALJ

to favor the second RFC, which he inexplicably and unjustifiably calls Dr.

Walker's 'final, comprehensive opinion'" (Doc. 21, p. 9, <u>quoting</u> Tr. 20 n.1).

This contention fails for several reasons.   In the first place, as the

Commissioner points out (Doc. 24, p. 9), the plaintiff has not identified any

medical evidence which compels a finding that the plaintiff has more

restrictive limitations than the law judge's residual functional capacity

assessment.

Moreover, it is the law judge's duty as fact-finder to consider the

evidence and determine the plaintiff's residual functional capacity.   In this

respect, the law judge has the responsibility to reconcile conflicting evidence.

Thus, the law judge was authorized to decide that Dr. Walker's second

opinion was his "final" one. This court cannot second-guess that factual determination.

Contrary to the plaintiff's suggestion that the law judge's residual functional capacity finding is based solely on the second opinion of Dr. Walker (Doc. 21, p. 8), the law judge also relied on the opinion of Dr. Anand K. Rao, a consultative examiner. The law judge summarized Dr. Rao's report as follows (Tr. 20):

> Anand K. Rao, M.D. interviewed and examined the claimant on February 24, 2010 to help more fully evaluate his physical condition. The claimant reported a history of a neck injury, history of a neck surgery, and current neck pain that radiates to the left shoulder with numbness and tingling in the fingers. The claimant reported only occasionally taking mild pain medication to treat his symptoms. Dr. Rao noted normal upper body musculature, 5+ motor strength in all extremities, slightly reduced range of motion of the cervical spine, normal shoulders, normal hands, normal elbows, normal fingers, normal fine finger movements, normal lower extremities, normal hips, normal knees, and normal ankles. Dr. Rao further noted normal range of motion of the lumbar spine, no difficulty getting out of a chair and onto the examination table, and an ability to bend normally. Dr. Rao concluded that he did not think the claimant had any significant disability, that he experienced only mild symptoms from his conditions, and that he could

> not do a job that required lifting more than 50 or 60
> pounds (Exhibit 1F).

In other words, Dr. Rao opined that the plaintiff could perform medium work.

The law judge stated that he gave Dr. Rao's opinion "significant weight" (Tr. 21). Importantly, the plaintiff's does not challenge the law judge's assessment of Dr. Rao's opinion. Moreover, an opinion by an examining physician, such as Dr. Rao, is generally entitled to more weight than an opinion by a nonexamining doctor, such as Dr. Walker. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985).

In all events, the plaintiff could not prevail even if he demonstrated that he could not perform medium work activity. Thus, in addition to the medium work position of building maintenance repairer, the law judge found that the plaintiff could return to his past work as a toll collector, which is a light duty occupation as generally performed in the national economy (Tr. 21-22).

B. In two related issues, the plaintiff attacks the law judge's findings regarding the severity of the plaintiff's impairments and the residual

-12-

functional capacity assessment (Doc. 21, pp. 10-12). These assertions are meritless.

The plaintiff contends that the law judge should have found, at step two of the sequential analysis, that the plaintiff's knee problems and carpal tunnel syndrome constitute severe impairments (id., pp. 10-11). However, the law judge recognized these allegations in his decision, and he provided the following explanation for his determination that the plaintiff's knee problems and carpal tunnel syndrome are not severe (Tr. 17-18):

> The claimant has alleged problems with his knees (Exhibit 12E, hearing testimony), but the record contains no evidence of any significant treatment being sought in connection with his knees since the September 2001 alleged onset date. An orthopedic surgeon evaluated the claimant in 1993 after he reportedly twisted his left knee and noted only old injuries to the left knee with residual aches and pain. An examination and x-rays were noted as normal (Exhibits 4F, 6F, 7F). A left knee cyst was noted in 1994, and the claimant's primary care provider at the time noted left knee degenerative joint disease (Exhibit 4F). A February 2010 consultative examination report makes no mention of the claimant reporting any problems with his knee(s), and it specifically mentions that both of his knees were normal upon examination (Exhibit 1F). It is therefore reasonable to conclude the claimant's remote history of left knee injuries, left

knee cyst, and left knee degenerative joint disease cause no more than minimal limitation in his ability to perform basic work-related activities when considered alone or in combination with all of his impairments.

...

The claimant did not allege any significant manipulative limitations resulting from carpal tunnel syndrome within supporting documents, but then alleged at the hearing having right carpal tunnel syndrome that causes difficulty writing and difficulty picking up small objects. Medical records in 1995 briefly refer to a nerve conduction study that was consistent with right carpal tunnel syndrome (Exhibit 9F). However, the record contains no evidence of any significant follow-up for this condition, and no evidence of the claimant even complaining of problems with manipulation. The February 2010 consultative examination report specifically noted the claimant's fingers as normal, that he had normal fine finger movements, and that he could manipulate small objects (Exhibit 1F). The claimant's remote history of right carpal tunnel syndrome is therefore found to cause no more than minimal limitation in his ability to perform basic work-related activities when considered alone or in combination with all of his impairments. It is further noted that the claimant testified he takes only over-the-counter pain medications.

The plaintiff, despite the directives of the Scheduling Order and Memorandum Requirements (Doc. 15), has not pointed to any evidence which

-14-

compels a different finding. Consequently, these contentions regarding knees and carpal tunnel syndrome are forfeited (id., p. 2).

Furthermore, the Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff has severe impairments, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987). Therefore, in order to demonstrate reversible error based upon a mistake regarding a level of severity of an impairment, the plaintiff must show that he had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity.

Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words,

-15-

it is the functional limitations that determine disability. <u>Moore</u> v. <u>Barnhart</u>, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); <u>McCruter</u> v. <u>Bowen</u>, <u>supra</u>.

The plaintiff asserts that the law judge's residual functional capacity finding should have included manipulative limitations due to his carpal tunnel syndrome (Doc. 21, pp. 11-12). However, the plaintiff does not cite any medical opinion setting forth functional limitations from that alleged condition.

The best the plaintiff could do is take issue with the law judge's statement that "[t]he claimant did not allege any significant manipulative limitations resulting from carpal tunnel syndrome within supporting documents" (Tr. 18). In this regard, the plaintiff argues that he mentioned problems with manipulation during the examination with Dr. Rao (Doc. 21, p.11). The only notation in Dr. Rao's report regarding manipulation problems is a recitation of the plaintiff's subjective complaints (<u>see</u> Tr. 191-92). As discussed below, the law judge reasonably discounted the plaintiff's subjective complaints of pain.

In all events, there is no support in the record for limitations concerning manipulation. Thus, no treating or examining physician has

opined that manipulation restrictions should be imposed. Moreover, in February 2010, Dr. Rao indicated that the plaintiff's "[s]houlders, elbows, hands and fingers are normal. He has normal fine finger movements. He has no numbness and no sensory loss in both upper extremities" (Tr. 192). Dr. Rao further stated that the plaintiff "has normal fine finger movements and can manipulate small objects" (id.).

        In addition, the plaintiff, pointing to his 1994 diagnosis of degenerative joint disease of the knee, complains that the law judge failed to include standing and walking restrictions in the residual functional capacity finding (Doc. 21, p. 12). The law judge, however, limited the plaintiff to 6 hours of standing or walking in an 8-hour workday (Tr. 19). The plaintiff cites no evidence supporting any greater limitations. In particular, no doctor has opined that the plaintiff has greater functional limitations from knee problems. As the Commissioner points out, the record contains no evidence of any significant treatment in connection with his knees after his September 2001 alleged disability onset date. Further, based on the February 2010 examination, Dr. Rao reported that the plaintiff's knees were normal.

Consequently, the plaintiff has failed to show that the law judge erred with respect to that alleged condition.

C. The plaintiff next asserts that the law judge improperly found that the plaintiff can return to his past relevant work as a toll collector and building maintenance repairer without developing the demands of those positions (Doc. 21, pp. 12-14). This contention is meritless.

The plaintiff has the burden to show that he cannot return to prior work. <u>Doughty</u> v. <u>Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001). An ability to return to work exists either if the plaintiff can do the job as he actually performed it, or if he can perform the job as it is done in the national economy. See <u>Jackson</u> v. <u>Bowen</u>, 801 F.2d 1291, 1293 (11th Cir. 1986). Relying on the Dictionary of Occupational Tables ("DOT"), the law judge in this case concluded that the plaintiff is "able to perform his past relevant work as a building maintenance repairer and as a toll collector as these jobs are generally performed" (Tr. 22).

The plaintiff contends that the law judge's residual functional capacity finding included postural limitations, but the "record does not indicate whether these jobs require constant balancing, crouching, and

-18-

stooping" (Doc. 21, p. 12). However, according to the DOT, the job of toll collector would not require the plaintiff to perform any balancing, crouching or stooping; and the building maintenance repairer position only requires occasional performance of those activities. See DICOT 211.462-038, 1991 WL 671847; DICOT 899.381-010, 1991 WL 687673.

The plaintiff argues further that the law judge's decision does not sufficiently describe the demands of the toll collector and building maintenance repairer positions (Doc. 21, p. 13). As indicated, the law judge based his views of the plaintiff's past relevant work upon the DOT. That reference is sufficient to show the demands of the two jobs as generally performed. Particularly since the job of toll collector involves only light work and no postural activities, the law judge could easily conclude that the plaintiff could return to that work. Moreover, the job description of toll collector that the plaintiff filled out confirms that the plaintiff could perform that job with his residual functional capacity (Tr. 154).

In a cursory manner, the plaintiff also suggests that the law judge erred by failing to employ a vocational expert at the administrative hearing (Doc. 21, p. 13). This argument fails. Thus, the use of testimony from a

-19-

vocational expert is not necessary when the law judge finds that the plaintiff can return to prior work.  Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11ᵗʰ Cir. 1990).

       D. Finally, the plaintiff challenges the law judge's credibility determination (Doc. 21, pp. 14-15).  This contention also lacks merit, as the law judge gave a reasonable explanation, supported by substantial evidence, for finding the plaintiff only partially credible.

       The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005).  As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11ᵗʰ Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the

credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 19). He even cited Landry v. Heckler (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Thus, the law judge stated (Tr. 21):

> Through supporting documents and hearing testimony, the claimant has alleged disability due to pain, numbness, limited range of motion in his neck, and difficulty with activities including bending, standing, walking, sitting, and reaching. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

-21-

are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant's allegations concerning the limiting effects of his symptoms are found to be not fully credible due to inconsistencies between them and the evidence of record. For example, the claimant has alleged a complete inability to work beginning September 1, 2001. However, as discussed above, the record contains no evidence of the claimant even receiving any treatment near that time. The claimant has alleged significant limitations resulting from injuries that occurred in 1977 and 1995, and there is nothing in the record to suggest they caused deterioration in his condition or an exacerbation of his symptoms in 2001. A consultative examination in 2010 further confirmed the absence of any significant limitations. In sum, the above residual functional capacity assessment is supported by the objective findings contained in the record, the opinion of DDS medical consultant Dr. Walker, and the opinion of examining source Dr. Rao.

This explanation is sufficient to discount the plaintiff's subjective complaints.

See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx.

693, 699 (11th Cir. 2006).

The plaintiff complains that the law judge "disregard[ed] the

financial limitations that determined [the plaintiff's] course of treatment"

(Doc. 21, p. 14). However, when the plaintiff was eligible for treatment through Polk HealthCare, he only saw a doctor "a couple of times" (Tr. 37). In fact, as the law judge pointed out, "[r]ecords indicate the claimant cancelled a September 2010 follow-up appointment with Dr. [Virgilio S.] Cabigas and there is nothing in the record to suggest the claimant has received any treatment since the June 2010 visit with Dr. Cabigas" (Tr. 20; see Tr. 253). The record also shows that the plaintiff was expending resources to finance his cigarette smoking habit of about two packs per day (Tr. 191), instead of spending at least some of those funds on what are claimed to be disabling symptoms.

In any event, whatever the reason for limited medical treatment, the result is that the medical evidence in this case is sparse. That circumstance substantially hampers the plaintiff in carrying his burden to show that he is disabled.

In sum, the law judge properly applied the Eleventh Circuit pain standard and, based on that standard, made a reasonable and adequately explained decision to decline to credit fully the plaintiff's subjective complaints. Of course, the law judge did accept the plaintiff's testimony to

the extent that it indicated that the plaintiff was limited to medium work with some additional restrictions.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 3 day of March, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE